**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | |
|---|---|
| JOSHUA BRENNER, Individually and on behalf of all others similarly situated, | ) ) **CLASS ACTION COMPLAINT** |
| | ) |
| Plaintiffs, | ) |
| v. | ) Case No.: 4:21-cv-1127 |
| | ) |
| WATCH GANG, INC. | ) |
| | ) |
| & | ) |
| | ) |
| MATTHEW GALLAGHER | ) |
| | ) |
| & | ) |
| | ) |
| ATTENTIVE MOBILE, INC. | ) **JURY TRIAL DEMANDED** |
| | ) |
| | ) |
| Defendant. | ) |

**COMPLAINT AND DEMAND FOR JURY TRIAL**

COMES NOW Plaintiff Joshua Brenner, individually and on behalf of all others similarly situated, and through undersigned counsel, and for his Complaint against Defendant Watch Gang, Inc. ("WGI"), Defendant Matthew Gallagher ("Gallagher"), and Defendant Attentive Mobile, Inc. ("AMI" and together with WGI and Gallagher, "Defendants") and  for their violations under the Telephone Consumer Protection Act, 47 U.S.C. § 227 *et seq.* ("TCPA"), and Mo. Rev. Stat 407.010, Missouri Merchandising Practices Act ("MMPA"), states to the Court as follows:

**INTRODUCTION**

1.     The TCPA was enacted in response to widespread public outrage about the proliferation of intrusive, nuisance telemarketing practices. Mims v. Arrow Fin. Servs., LLC, 132 S. Ct. 740, 745 (2012).

2.     Defendants, upon information and belief, make auto-dialed calls and send text

messages to individuals across the country.

3.     Defendants attempts to telemarket their products and services to consumers across the country.

4.     Defendants WGI and Gallagher sell watches and watch memberships to consumers. Upon info

5.     Defendants WGI and Gallagher commissioned or otherwise encouraged Defendant AMI to send text messages to individuals across the country.

6.     Unfortunately, Defendants do not obtain prior express written consent to place these autodialed telemarketing calls and text messages, do not abide by the FTC's do-not-call list, and do not maintain their own internal do-not-call list, and, therefore, are in violation of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227.

7.     These autodialed calls placed by Defendants caused Plaintiff and class members to suffer actual harm and legal injury. Plaintiff has suffered aggravation, invasion of privacy, and nuisance due to receiving such calls. Plaintiff and class members suffered from the diminished use, enjoyment, utility, and value of their telephones as these text messages interfered with their access to their cell and residential phones.

8.     The TCPA was enacted to protect consumers from unauthorized and unwanted autodialed calls and text messages exactly like the ones alleged in this case. See Mims v. Arrow Fin Servs., LLC, 132 S.Ct., 740, 745 (2012). Defendants placed these autodialed calls and sent these text messages despite the fact that Plaintiff never provided Defendants with prior express written consent to receive them.

9.     Senator Hollings, the TCPA's sponsor described these autodialed calls as "the scourge of modern civilization, they wake us up in the morning; they interrupt our dinner at night; they force the sick and elderly out of bed; they hound us until we want to rip the telephone out of the wall." 137

Cong. Rec. 30, 821 (1991).

10.     By placing the autodialed calls and sending the text messages at issue to individuals on both the FTC do-not-call registry and who should be on an internal do-not-call list, Defendants have violated the privacy and statutory rights of Plaintiff and caused him to suffer actual harm by subjecting him to the aggravation that necessarily accompanies the receipt of such repeated and unauthorized autodialed calls and text messages.

11.     Plaintiff therefore seeks an injunction requiring Defendants to stop using an autodialer to place telemarketing calls and messages to telephones, to stop allowing phone calls and text messages to numbers on the FTC's do-not-call registry, and to maintain and abide by an internal do-not-call registry, as well as an award of actual and statutory damages, together with costs and reasonable attorneys' fees.

## **PARTIES**

12.     Plaintiff Joshua Brenner ("Plaintiff") is a resident of the State of Missouri.

13.     Defendant Watch Gang, Inc. is a California limited liability company organized in the state of California with its principal place of business in Burbank, California.

14.     Defendant Gallagher is an individual domiciled in the state of California and upon information and belief, resides at 3382 Canton Way, Studio City, California 91604.

15.     Defendant Gallagher is the owner, organizer, controller, and upon information and belief, is an executive for WGI.

16.     Upon information and belief Defendant Gallagher has complete and total control over the conduct and actions of WGI.

17.     Defendant Gallagher, upon information and belief, controls the marketing strategy of WGI, including its decision to employ unlawful telemarketing strategies.

18.     Defendant Gallagher is vicariously liable for WGI's actions as he had agency over determining marketing strategies, who received calls, and how these were limited.

19.     Defendants, upon information and belief, have employed unlawful tactics to procure information from consumers in order to make auto-dialed calls and messages to such consumers.

20.     Upon information and belief, Defendants provide phone numbers to various individuals and third-parties in order to have such parties solicit consumers on Defendants' behalf.

21.     Upon information and belief, Defendant Gallagher is vicariously liable for WGI's actions as they had agency over the phone numbers WGI were provided, control over whether proper consent was obtained to use such phone numbers, and upon information and belief, directed WGI to make such calls or solicit such calls and messages, knowing proper authorization had not been obtained.

22.     Defendant AMI is a corporation organized in the state of Delaware with its headquarters located at 156 5th Avenue, Suite 303, New York, New York 10010 that conducts business throughout this state and throughout the country.

23.     Defendant AMI acts as a marketer for corporations utilizing both text messaging campaigns and auto-dialed phone calls to consumers.

24.     Defendants, upon information and belief, have employed unlawful tactics to procure information from consumers and made auto-dialed calls and text messages to consumers, including Plaintiff.

## JURISDICTION AND VENUE

25.     This Court has personal jurisdiction over Defendants because Defendants frequently transacts business in this state, have made contracts within this state, and/or have committed tortious acts within this state and otherwise have sufficient minimum contacts with the State of Missouri.

26.     Venue is proper because a substantial part of the events, actions, and omissions of

Defendants, which give rise to the claims and subjects Defendants to liability for this auto-dialed calling and texting campaign and failure to maintain and internal do-not-call list, occurred in this circuit.

27.     Plaintiff resides in this venue and received the at-issue calls while in this venue.

28.     Plaintiff's area code, (636), is associated with the eastern half of Missouri. Thus, any party texting or calling Plaintiff should reasonably expect Plaintiff to reside in this district.

29.     Defendant WGI is incorporated in and domiciled in the state of California with its principal place of business located in Burbank, California and attempts to market and sell its services throughout the entire country.

30.     Defendant Gallagher purposefully availed himself of this jurisdiction by instructing individuals to call an individual it knew was in St. Louis, Missouri.

31.     Defendant AMI attempts to market and sell products in which it is contracted to market throughout the state of Missouri.

32.     Defendant AMI continually texted a phone number with the area code (636), and thereby knowingly engaged with this district and venue, creating sufficient minimum contacts in this matter.

33.     Plaintiff is an individual located in St. Louis, Missouri.

34.     This Court has personal jurisdiction over Defendants because they have purposefully availed itself of this jurisdiction and specifically, this Circuit, as the events giving rise to this lawsuit occurred in and emanated from, in substantial part, this Circuit.

**TCPA BACKGROUND**

35.     In 1991, Congress enacted the TCPA to regulate the explosive growth of the telemarketing industry. In so doing, Congress recognized that "[u]nrestricted telemarketing…can be

an intrusive invasion of privacy[.]" Telephone Consumer Protection Act of 1991, Pub. L. No. 102-243, § 2(5) (1991) (codified at 47 U.S.C. § 227).

36.     Through the TCPA, Congress outlawed telemarketing via unsolicited automated or pre-recorded telephone calls ("robocalls"), finding:

> Residential telephone subscribers consider automated or prerecorded telephone calls, regardless of the content or the initiator of the message, to be a nuisance and an invasion of privacy.

- - -

> Banning such automated or prerecorded telephone calls to the home, except when the receiving party consents to receiving the call…is the only effective means of protecting telephone consumers from this nuisance and privacy invasion. *Id.* § 2(10) and (12); *see also Mims*, 132 S. Ct. at 745.

### *The TCPA imposes vicarious liability on third-parties who do not physically dial the calls*

37.     Under the TCPA, a seller of a product or service may be vicariously liable for a third-party marketer's violations, even if the seller did not physically dial the illegal call, and even if the seller did not directly control the marketer who did. *In re Joint Pet. Filed by Dish Network, LLC*, FCC 13-54 ¶ 37, 2013 WL 193449 (May 9, 2013) ("FCC Ruling").

38.     A seller is liable when it has authorized a telemarketer to market its goods or services. *Id.* ¶ 47.

39.     Additionally, a seller may be vicariously liable for violations of those provisions under principles of apparent authority and ratification. Factors relevant to a finding of vicarious liability include:

a.     Whether "the seller allows the outside sales entity access to information and systems that normally would be within the seller's exclusive control, including…access to detailed information

6

regarding the nature and pricing of the seller's products and services or to the seller's customer information,"

b.      Whether the outside sales entity can "enter consumer information into the seller's sales or customer systems,"

c.      Whether the outside sales entity has "the authority to use the seller's trade name, trademark and service mark,"

d.      Whether the "seller approved, wrote or reviewed the outside entity's telemarketing scripts," and

e.      "Whether the seller knew (or reasonably should have known) that the telemarketer was violating the TCPA on the seller's behalf and the seller failed to take effective steps within its power to force the telemarketer to cease that conduct." *Id.* ¶ 46.

## STANDING

40.      The TCPA, 47 USC 223(b)(3) confers a private right of action to any person an action based on violations the statute.

## FACTUAL ALLEGATIONS

41.      Plaintiff is a "person" as defined by 47 U.S.C. § 153(39).

42.      On or about January 2021, the specific date better known by Defendants, Defendants began contacting Plaintiff via telephone via text messages.

43.      Upon information and belief, these text messages came from Defendant AMI.

44.      These calls were placed for Defendants WGI and by extension, Defendant Gallagher.

45.      When the telemarketing campaign begin, Defendants attempted to telemarket its watch subscription services to Plaintiff.

46.      Plaintiff did not consent to receiving these text messages.

47.     Plaintiff does not have an existing relationship with Defendants.

48.     Plaintiff has not inquired with Defendants about its products or services.

49.     Plaintiff is the regular user, owner, and only individual assigned to the personal phone number (636) 346-3672 and was the recipient of Defendants' calls to that number.

50.     Plaintiff's personal phone number, (636) 346-3672 is assigned to his personal cellular phone service.

51.     Plaintiff does not use this telephone line for any business purposes.

52.     Plaintiff informed Defendants that he was not interested in the services and wished for the text messages to cease on March 21, 2021.

53.     At that point in time, Defendants became aware they did not have a business relationship with Plaintiff, that Plaintiff did not wish to have a business relationship with Defendants, and that Plaintiff wished to be added to Defendants' internal do-not-call list.

54.     Unfortunately, Defendants continued their telemarketing campaign.

55.     Plaintiff then again opted out via text message on April 7, 2021.

56.     At that point, Defendants had received notice on two separate occasions that the text messages were unwelcome and harassing.

57.     Plaintiff has been on the National Do Not Call Registry since December 31, 2004.

58.     Defendants are not entitled to send soliciting text messages to these registered number without prior express consent, which they did not have.

59.     Defendants sent Plaintiff 45 text messages prior to Plaintiff advising Defendant of its error.

60.     Defendants sent at least forty-five (45) messages to an individual on the Do Not Call registry without consent from that individual.

61.     After unequivocally revoking any consent to receive telemarketing text messages, Defendants continued to contact Plaintiff.

62.     Plaintiff did not advise Defendant that communication may resume at any point in time.

63.     Plaintiff received at least fifty-nine (59) text messages from Defendants after insisting that the telemarketing campaign cease.

64.     Upon information and belief, Plaintiff has received well in excess of one hundred and four (104) text messages, to be determined by the discovery phase.

65.     Defendants refused to stop this harassment.

66.     Defendants knew that Plaintiff did not wish to be texted but continued to do.

67.     Plaintiff has not given written consent to receive calls or messages from, or on behalf of Defendants, or any of their representatives or affiliates.

68.     Plaintiff does not have a pre-existing business relationship with Defendants, or any of its representatives or affiliates.

69.     Plaintiff explicitly advised Defendants that he wished to no longer receive these telemarketing communications from Defendants.

70.     Plaintiff has had to constantly endure these harassing telemarketing calls throughout his day as they invaded upon his privacy and solitude.

71.     Defendants knew that they continued to text message to attempt to telemarket services from an individual who attempted to prevent his phone number from receiving such harassing calls and messages.

72.     These continued messages were harassing and intended to frustrate Plaintiff.

73.     Upon information and belief, some or all of these calls utilized an artificial and pre-recorded voice to deliver unsolicited information to Plaintiff.

74.   Plaintiff instructed Defendants' agents/representatives to stop messaging his device.

75.   Even if Defendants believed they had consent to call or message Plaintiff, Plaintiff made clear numerous times that they did not have consent and should cease all calls.

76.   Despite clearly and unequivocally revoking any consent Defendants may have believed they had to call or message Plaintiff, Defendants continued to place automated calls and messages to Plaintiff.

77.   Upon information and belief, Defendant AMI's "systems" include an auto-dialer system and internal Do Not Call Lists.

78.   Upon information and belief, Defendant AMI's "systems" include automatic texting, wherein a series of messages are programmed to be sent to thousands of individuals.

79.   Upon information and belief, Defendant AMI continued to call and message individuals placed on the internal Do Not Call List despite consumer's requests to be placed on such a list.

80.   Upon information and belief, Defendants WGI and Gallagher knew, or should have known, that Defendant AMI failed to obtain prior consent before contacting individuals and did not properly maintain its internal do-not-call list.

81.   In the alternative, Defendants WGI and Gallagher provided Defendant AMI with phone numbers that it knew did not consent to receiving such information.

82.   Each subsequent call Defendants made to Plaintiff's telephone was knowing and willful and done so without the express consent of Plaintiff.

83.   Defendants intentionally harassed and abused Plaintiff on numerous occasions by regularly texting him several times in a row.

84.   Upon information and belief, Defendants WGI and Gallagher have engaged in business strategies that include marketing through illegal telemarketing calls and text messages.

85.     Upon information and belief, Defendant AMI has corporate policies to use an automatic telephone dialing system, pre-recorded or artificial voice, and to not honor do-not call requests in messaging individuals just as they did to Plaintiff's line in this case.

86.     Upon information and belief, Defendant AMI's corporate policy is structured so as to continue to call or message individuals like Plaintiff, on behalf of other companies that seek to harass consumers, despite these individuals explaining to all Defendants that they want the calls to cease.

87.     Not a single call or message placed by Defendants to Plaintiff was placed for "emergency purposes" as specified in 47 U.S.C. § 277(b)(1)(A).

88.     Defendants willfully and knowingly violated the TCPA with respect to Plaintiff.

89.     Each text message sent by Defendants to the Plaintiff's phone without consent caused Plaintiff to suffer the injury of invasion of privacy and the intrusion upon his right of seclusion.

90.     Each text message sent by Defendants to the Plaintiff's phone without consent caused Plaintiff to suffer the injury of unnecessary expenditures to his time. For the messages Plaintiff opened, the time spent doing so was unnecessary as Plaintiff repeatedly asked for the messages to stop. Even for unanswered messages, Plaintiff had to waste time silencing his ring tone or deleting the message. This also impaired the usefulness of Plaintiff's phone, which is designed to inform the user of important and legitimate missed communications.

91.     Each text message sent by Defendants to the Plaintiff's phone without consent caused Plaintiff to suffer the injury of occupation of his phone line by unwanted calls, making the phone unavailable for legitimate callers, messages, or outgoing calls and messages, while the phone was alerting Plaintiff to yet another message from Defendants.

92.     Each text message sent by Defendants without the consent of the Plaintiff occupied space in Plaintiff's phone.

93.     Every text message sent by Defendants without express consent to Plaintiff's phone resulted in injury of trespass to Plaintiff's chattel, namely his telephone.

94.     As a result of the text messages described above, Plaintiff was affected in a personal and individualized way through stress, anxiety, nervousness, distress and aggravation.

95.     Defendants' conduct has caused Plaintiff to suffer damages including, but not limited to, the loss of time incurred by Plaintiff as well as attorneys' fees paid for advice regarding his situation.

96.     A corporation or other entity that contracts out its telephone marketing may be held vicariously liable under federal common law principles of agency for violations of the TCPA that are committed by third-party telemarketers.

97.     Defendants WGI and Gallagher are thus directly liable for AMI's telemarketing cmessages because, upon information and belief, they actively participated in the messaging by allowing such an outside entity access to information and systems that normally would be within the seller's exclusive control by giving AMI access to its messaging systems and internal data.

98.     Defendants WGI and Gallagher maintain interim control over AMI, as they hired AMI to perform tasks and dictated parameters for potential prospects.

99.     Defendants WGI and Gallagher knew, or should have know, that AMI was violating the TCPA on its behalf and failed to take effective steps within its power to force AMI to cease such conduct. Defendants WGI and Gallagher tacitly consented to such actions by not reasonably investigating or preventing such conduct.

## CLASS ALLEGATIONS

100.    This action is brought as a class action. Plaintiff brings this action on behalf of himself and on behalf of all other persons similarly situated pursuant to Rule 23 of the Federal Rules of Civil Procedure.

101.    The identities of all class members are readily ascertainable from the records of

Defendants.

102.    Excluded from the Plaintiff's Class are Defendants, and all officers, members, partners, managers, directors, and employees of Defendants, and all of their respective immediate families, and legal counsel for all parties to this action and all members of their immediate families.

103.    There are questions of law and fact common to the Plaintiff's Class, which common issues predominate over any issues involving only individual class members. The principal issues are whether Defendants' communications with the Plaintiff, such as the above stated claims, violate provisions of the TCPA.

104.    Plaintiff's claims are typical of the class members, as all are based upon the same facts and legal theories.

105.    Plaintiff will fairly and adequately protect the interests of the Plaintiff's Class defined in this complaint. Plaintiff has retained counsel with experience in handling consumer lawsuits, complex legal issues, and class actions, and neither the Plaintiff nor his attorneys have any interests, which might cause them not to vigorously pursue this action.

106.    This action has been brought, and may properly be maintained, as a class action pursuant to the provisions of Rule 23 of the Federal Rules of Civil Procedure because there is a well-defined community interest in the litigation:

a.      **Numerosity**: Plaintiff is informed and believes, and on that basis alleges, that the Plaintiff's Class defined above is so numerous that joinder of all members would be impractical.

b.      **Common Questions Predominate**: Common questions of law and fact exist as to all members of the Plaintiff's Class and those questions predominate over any questions or issues involving only individual class members. The principal issues are whether Defendants' communications with the Plaintiff, including its failure to abide by the FTC do-

13

not-call list and failure to maintain an internal do-not-call list, such as in the above stated claims, violate provisions of the TCPA.

        c.     **Typicality**: Plaintiff's claims are typical of the claims of the class members. Plaintiff and all members of Plaintiff's Class defined in this complaint have claims arising out of the Defendants' common uniform course of conduct complained of herein.

        d.     **Adequacy**: Plaintiff will fairly and adequately protect the interests of the class members insofar as Plaintiff has no interests that are adverse to the absent class members. Plaintiff is committed to vigorously litigating this matter. Plaintiff has also retained counsel experienced in handling consumer lawsuits, complex legal issues, and class actions. Neither the Plaintiff nor his counsel have any interests, which might cause them not to vigorously pursue the instant class action lawsuit.

        e.     **Superiority**: A class action is superior to the other available means for the fair and efficient adjudication of this controversy because individual joinder of all members would be impracticable. Class action treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum efficiently and without unnecessary duplication of effort and expense that individual actions would engender. Certification of a class under Rule 23(b)(l)(A) of the Federal Rules of Civil Procedure is appropriate because adjudications with respect to individual members create a risk of inconsistent or varying adjudication which could establish incompatible standards of conduct for Defendants who, upon information and belief, instigate the autodialed calling of do-not-call registered individuals throughout the United States of America.

107.    Certification of a class under Rule 23(b)(2) of the Federal Rules of Civil Procedure is also appropriate in that a determination that the above stated claims, violate provisions of the TCPA, and is tantamount to declaratory relief and any monetary relief under the TPCA would be merely

incidental to that determination.

108.    Certification of a class under Rule 23(b)(3) of the Federal Rules of Civil Procedure is also appropriate in that the questions of law and fact common to members of the Plaintiff's Class predominate over any questions affecting an individual member, and a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

109.    Further, Defendants have acted, or failed to act, on grounds generally applicable to the Rule (b)(l)(A) and (b)(2) Class, thereby making appropriate final injunctive relief with respect to the Class as a whole.

110.    Depending on the outcome of further investigation and discovery, Plaintiff may, at the time of class certification motion, seek to certify one or more classes only as to particular issues pursuant to Fed. R. Civ. P. 23(c)(4).

111.    This cause of action is brought on behalf of Plaintiff and the members of a class.

112.    The class consists of all persons whom Defendants' records reflect were sent a telemarketing messages by Defendants, and (a) whose phone numbers are registered with a cellular device or residential phone line; (b) who had not given written consent to be subjected to these messages; or (c) had explicitly revoked or made clear the lack of consent to make such messages; or (d) were on the FTC's do-not-call registry; and (e) the Plaintiff asserts that the messages described contained violations of the TCPA for sending telemarketing messages which they had no authority or right to make to Plaintiff and all those in the Class.

**COUNT I**
**VIOLATIONS OF THE TELEPHONE CONSUMER**
**PROTECTION ACT, 47 U.S.C. § 227 *ET SEQ.***
**Auto-dialed calls and messages**

113.    Plaintiff, individually and on behalf of all others similarly situated, incorporates by reference all other paragraphs of this Complaint as if fully stated herein.

114.    The foregoing acts and omissions of the Defendants constitutes violations of the TPCA, including but not limited to each of the above cited provisions of 47 U.S.C. § 227 *et seq*.

115.    Defendants violated the TCPA by (a) initiating a telephone call using an automated dialing system to Plaintiff's cellular telephone number assigned to him, or (b) by the fact that others caused the initiation of those calls on its behalf. *See* C.F.R. 64.1200(a)(1)(iii); 47 U.S.C. § 227(b)(1).

116.    The TCPA provides a private right of action, wherein a person may, if otherwise permitted by the laws or rules of court of a state, bring in an appropriate court of that state:

a.      An action based on a violation of this subsection or the regulations prescribed under this subsection to enjoin such violation.

b.      An action to recover for actual monetary loss from such a violation, or to receive $500 in damages for each such violation, whichever is greater; or

c.      Both such actions.

117.    The Court, in its discretion, may treble the statutory damages if the violation was knowing. 47 U.S.C. § 227.

118.    The TCPA is a strict liability statute and Defendants are liable to Plaintiff, individually, and on behalf of all others similarly situated, even if its actions were only negligent.

119.    Defendants knew or should have known that: (a) Plaintiff had unequivocally revoked any given express permission or invitation for Defendants or anyone else to initiate a telephone call or text message using an automated dialing system to Plaintiff's telephone number to solicit information about Defendants, and that (b) Plaintiff had unequivocally revoked any give express permission or invitation for Defendants or anyone else to initiate telemarketing calls or text messages to Plaintiff.

120.    If the Court finds that Defendants knowingly violated this subsection or the regulations prescribed under this subsection, the Court may, in its discretion, increase the amount of

the award to an amount equal to not more than three times the amount available under subparagraph (b) of this paragraph. 47 U.S.C. § 227(b)(3).

121.     Plaintiff, and all others similarly situated, is also entitled to and do seek injunctive relief prohibiting the Defendants' violation of the TCPA in the future.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, respectfully requests that the Court grant Plaintiff, and all others similarly situated, the following relief against the Defendants:

a.     Injunctive relief prohibiting such violations of the TCPA by the Defendants in the future;

b.     As a result of the Defendants' willful and/or knowing violations of 47 U.S.C. § 227, Plaintiff, and all others similarly situated, seek treble damages, as provided by statute, of up to $1,500 for each and every call that violated the TCPA;

c.     As a result of Defendants' violations of 47 U.S.C. § 227, Plaintiff, and all others similarly situated, seek $500 in statutory damages for each and every call that violated the TCPA;

d.     A declaration that Defendants' conduct violated the TCPA and that this action is just and proper;

e.     An award of costs and such further relief as the Court may deem just and proper;

f.     That this Court award pre-judgment and post-judgment interest at the statutory rate of 9%;

g.     That this Court award Plaintiff's its attorney fees and all expenses incurred in preparing and prosecuting this claim; and

h.      Such other relief as this Court may deem just and proper.

**COUNT II**
**VIOLATIONS OF THE TELEPHONE CONSUMER**
**PROTECTION ACT, 47 U.S.C. § 227 *ET SEQ.***
**Do Not Call Violations**

122.    Plaintiff, individually and on behalf of all others similarly situated, incorporates by reference all other paragraphs of this Complaint as if fully stated herein.

123.    The foregoing acts and omissions of the Defendants constitute violations of the TPCA, including but not limited to each of the above cited provisions of 47 U.S.C. § 227 *et seq.*

124.    The TCPA provides a private right of action, wherein a person may, if otherwise permitted by the laws or rules of court of a state, bring in an appropriate court of that state:

a.      An action based on a violation of this subsection or the regulations prescribed under this subsection to enjoin such violation.

b.      An action to recover for actual monetary loss from such a violation, or to receive $500 in damages for each such violation, whichever is greater; or

c.      Both such actions.

125.    The Court, in its discretion, may treble the statutory damages if the violation was knowing. 47 U.S.C. § 227.

126.    The TCPA is a strict liability statute and Defendants are liable to Plaintiff, individually, and on behalf of all others similarly situated, even if its actions were only negligent.

127.    Defendants called a residential telephone subscriber who had registered his telephone number on the national do-not-call registry of persons who do not wish to received telephone solicitations that is maintained by the Federal Government.

128.    Defendants called a residential telephone subscriber who had asked numerous times to be on its company-specific do-not-call lists, and thus failed to maintain its internal do-not-call list so as to cease calling individuals who request Defendants do so.

129.     If the Court finds that Defendants knowingly violated this subsection or the regulations prescribed under this subsection, the Court may, in its discretion, increase the amount of the award to an amount equal to not more than three times the amount available under subparagraph (b) of this paragraph. 47 U.S.C. § 227(b)(3).

130.     Plaintiff, and all others similarly situated, is also entitled to and do seek injunctive relief prohibiting the Defendants' violation of the TCPA in the future.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, respectfully requests that the Court grant Plaintiff, and all others similarly situated, the following relief against the Defendants:

a.       Injunctive relief prohibiting such violations of the TCPA by the Defendants in the future;

b.       As a result of the Defendants' willful and/or knowing violations of 47 U.S.C. § 227, Plaintiff, and all others similarly situated, seek treble damages, as provided by statute, of up to $1,500 for each and every call that violated the TCPA;

c.       As a result of Defendants' violations of 47 U.S.C. § 227, Plaintiff, and all others similarly situated, seek $500 in statutory damages for each and every call that violated the TCPA;

d.       A declaration that Defendants' conduct violated the TCPA and that this action is just and proper;

e.       An award of costs and such further relief as the Court may deem just and proper;

f.       That this Court award pre-judgment and post-judgment interest at the statutory rate of 9%;

19

g.      That this Court award Plaintiff's its attorney fees and all expenses incurred in preparing and prosecuting this claim; and

h.      Such other relief as this Court may deem just and proper.

**COUNT III**
**VIOLATIONS OF MISSOURI CONSUMER FRAUD**
**AND DECEPTIVE BUSINESS PRACTICES ACT Chapter 407**

117.    Plaintiff, individually, and on behalf of all others similarly situated, incorporates by reference the foregoing paragraphs of this Complaint as if fully set forth herein.

118.    In accordance with Chapter 407, Plaintiff, and all others similarly situated, bring Count II for Defendants' unfair practice of making unsolicited and unlawful text messages to Plaintiff's telephone number without permission or after permission has been revoked:

All persons who, on or after four years prior to the filing of this action, were sent telephone messages by or on behalf of Defendants with respect to whom Defendants cannot provide evidence of prior express permission or invitation.

119.    Defendants violated the unfairness predicate of the Act by engaging in an unscrupulous business practice and by violating Missouri public policy, which public policy violations in the aggregate caused substantial injury to Plaintiff.

120.    Defendants' misconduct caused damages to Plaintiff, including loss of the exclusive use of his telephone, loss of time, and emotional distress.

121.    Plaintiff routinely uses his telephone. Defendants' actions prevented Plaintiff from using his telephone during the time Defendants contacted Plaintiff's telephone for Defendants' unlawful purposes. Plaintiff lost valuable time receiving Defendant's unlawful telephone calls.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, respectfully requests that the Court grant Plaintiff, and all others similarly situated, the following relief against the Defendants:

a.      That this Court award judgment against Defendants in a total amount in excess of the $25,000 jurisdictional amount of this Court to be proven at trial;

b.      That this Court award damages to Plaintiff, and all others similarly situated;

c.      That this Court award treble damages to Plaintiff, and all others similarly situated, for knowing violations of the MMPA;

d.      That this Court award punitive damages to Plaintiff, and all others similarly situated;

e.      That this Court declare that Defendants' conduct violated the MMPA and that this action is just and proper;

f.      That this Court award Plaintiff, and all others similarly situated, damages and attorney fees for violation of The Missouri Consumer Fraud and Deceptive Business Practices Act Chapter 407;

g.      That this Court award Plaintiff all expenses incurred in preparing and prosecuting these claims;

h.      That this Court enter an injunction prohibiting Defendants from such violations of the MMPA by the Defendants in the future; and

i.      Awarding such further relief as this Court may deem just and proper.

## **JURY DEMAND**

122.    Plaintiff hereby demands a jury trial on all counts so triable.

Dated: September 15, 2021

Respectfully Submitted,

**HALVORSEN KLOTE**


By:    /s/ Samantha J. Orlowski

Samantha J. Orlowski, #72058
Joel S. Halvorsen, #67032
680 Craig Road, Suite 104
St. Louis, MO 63141
P: (314) 451-1314
F: (314) 787-4323
sam@hklawstl.com
joel@hklawstl.com
*Attorneys for Plaintiff*